# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JESSICA OSBORN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-20-96-SPS |
| ) | |
| CHRIS MEITZEN, Individually, and ) | |
| CALERA, OKLAHOMA, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT TOWN OF CALERA'S MOTION TO DISMISS AND BRIEF IN SUPPORT

This case arises out of an encounter between the Plaintiff, Jessica Osborn, and an officer with the town of Calera, Oklahoma, Defendant Chris Meitzen. The Plaintiff has named Officer Meitzen individually, as well as the town of Calera, Oklahoma, in her Complaint, alleging claims pursuant to 42 U.S.C § 1983. The Defendant Town of Calera, Oklahoma ("Calera") now seeks to dismiss Plaintiff's second cause of action for municipal liability as to Calera. For the reasons set forth below, the Defendant Town of Calera's Motion to Dismiss and Brief in Support [Docket No. 8] is hereby GRANTED IN PART and DENIED IN PART.

### BACKGROUND

According to her Complaint, the Plaintiff was driving a motorcycle without a working taillight through the town of Calera on April 12, 2018. Bryan County Sheriff's

Office Deputy Mark Idell spotted her motorcycle and began following her and signaling with his emergency lights that he intended to make a traffic stop, but the Plaintiff did not stop or pull over. Deputy Idell notified the communications center that he was pursuing a fleeing vehicle, and he continued following her for three minutes. At one intersection, the Plaintiff slowed down because her view of cross traffic was obstructed, then turned eastbound at that intersection. As the Plaintiff proceeded eastbound, Defendant Meitzen, a Calera Police officer, moved his patrol car to block the roadway directly in front of the Plaintiff. Plaintiff, unable to stop, struck the passenger front side of Defendant Calera's patrol car, and was injured. *See* Docket No. 2, pp. 2-8, ¶¶ 5-41.

The Plaintiff's Complaint sets out two causes of action. Count One, as to Defendant Meitzen individually, sets forth a claim pursuant to § 1983 alleging excessive use of force. Count Two, as to Defendant Town of Calera, sets forth a claim pursuant to § 1983 alleging municipal liability. The Defendant Town of Calera now moves to dismiss the second cause of action.

## ANALYSIS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain,* 478 U.S. 265, 286 (1986)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor

does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement . . . To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 555-557, 570 [internal quotation marks omitted]. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). This requires a determination as to "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007), *quoting Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

A claim for municipal liability "requires the plaintiff [to] prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." *Cox v. Glanz*, 800 F.3d 1231, 1255 (10th Cir. 2015) (internal quotations omitted). *See also Yarbrough v. City of Kingfisher*, 153 F.3d 730, 1998 WL 427122, at *3 (10th Cir. July 14, 1988) (unpublished Table Opinion) ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and

must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.") (*quoting Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions— and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (*quoting Brammer–Hoelter v. Twin Peaks Charter Acad.,* 602 F.3d 1175, 1189–90 (10th Cir. 2010) (*quoting City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, (1988) and *City of Canton v. Harris,* 489 U.S. 378, 388–91, (1989)) (internal quotation marks omitted). Here, it appears that the Plaintiff is alleging municipal liability in her Original Complaint based on ratification and on an alleged failure to train. The Defendant contends, however, that the Plaintiff has pleaded insufficient facts that are unduly broad and represent improper legal conclusions.

**Ratification**. "A municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson*, 627 F.3d at 790. *See also Praprotnik*, 485 U.S. at 127, ("[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the

-4-

municipality because their decision is final.") (emphasis in orginal).  Because a municipality cannot be held liable on a *respondeat superior* theory of liability, *see Monell v. Dept. of Soc. Svcs. of City of New York*, 436 U.S. 658, 691 (1978), the Plaintiff here "must identify a policymaker who ratified the officer['s] actions." *Tivis v. City of Colorado Springs*, 2020 WL 1166842, at *5 (D. Colo. March 11, 2020) (*citing Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009)).  Here, the Plaintiff alleges in the Complaint that Chief of Police Don Hyde ratified Defendant Meitzen's unconstitutional actions because he found no wrongdoing by Defendant Meitzen after the incident.  *See* Docket No. 2, pp. 17, 1920, ¶¶ 112, 114, 116.  This is insufficient to state a claim, as further discussed below.

"Failing to adequately investigate or punish does not count as ratification." *Lynch v. Board of County Commissioners of Muskogee County, Oklahoma*, 786 Fed. Appx. 774, 787 (10th Cir. 2019).  "The final policymaker must not only approve the decision, but also adopt the basis for the decision, and the ratification must be the *moving force, or cause*, of the alleged constitutional violation." *Dempsey v. City of Baldwin*, 143 Fed. Appx. 976, 986 (10th Cir. 2005) (emphasis added) (*citing Paprotnik*, 480 U.S. at 127 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").  Accordingly, Chief Hyde's alleged post-act ratification is insufficient to establish a claim for municipal liability under a theory of ratification.  *See, e. g.*, *Estate of Valverde v. Dodge*, 2017 WL 1862283, at *10 (D. Colo. May 9, 2017) ("Indeed, because the alleged ratification happened after the shooting, Plaintiff had already suffered the injury by the time it occurred.  Therefore, Denver's acceptance and praise of Dodge's conduct did not cause

Valverde's injury."). *See also Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("[B]asic principals of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation."). Because the Plaintiff has failed to allege a causal link between the act of ratification and the alleged unconstitutional conduct, the Plaintiff's claim for municipal liability based on ratification is hereby dismissed.

**Failure to Train.** "In order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a Plaintiff must first prove the training was in fact inadequate, and then satisfy the following requirements: (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training." *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003) (*citing City of Canton v. Harris*, 489 U.S. 378,388 (1989)). Generally speaking, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, it is possible that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city

is responsible, and for which the city may be held liable if it actually causes injury." *City of Canton*, 489 U.S. at 390.  Importantly, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61.

As to the first element, the Plaintiff has alleged that Defendant Meitzen's actions constituted a violation of her constitutional rights.  Defendant Meitzen has filed an Answer, but that allegation has not been adjudicated at this stage of the litigation.  *Iqbal*, 556 U.S. at 678 ("A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  For purposes of the present motion, the Court finds the Plaintiff has sufficiently alleged the first element when she alleges that Defendant Meitzen's actions constituted excessive deadly force when he used his patrol car as a roadblock to stop her motorcycle because he did not have probable cause to believe she posed a serious physical threat.  *See Leadholm v. City of Commerce City*, 2017 WL 1862313, at *8 (D Colo. May 9, 2017) ("Here, four of the five individual Defendants in this case have filed Answers to the Amended Complaint[;] accordingly, at this early stage of the proceeding at which the merits of the case have not been adjudicated, the Court finds it proper to deny the City's motion to dismiss[.]").  Likewise, the Plaintiff has alleged that Chief Hyde was aware that Calera police officers would be required to stop a fleeing suspect on a motorcycle, which is sufficient to allege a usual and recurring situation and satisfies the second element.  And Plaintiff has alleged that Calera's failure to train was the moving force in Defendant Meitzen's actions that day, which is sufficient

for the fourth element at this stage of the litigation. This leaves the third element, which is addressed below.

The third element, deliberate indifference, is usually established by alleging a pattern or practice. *Connick*, 563 U.S. at 61. But here, the Plaintiff has made no effort at alleging a pattern or practice that placed a policymaker, *i. e.*, Chief Hyde, on actual or constructive notice that a particular omission in training caused the constitutional violation in this case. Thus, the Court is left with the allegation of single-incident liability and whether the allegations in this Complaint fall within the "narrow range of circumstances" where a pattern of similar violations is not necessary. *Id. See also Bryson*, 627 F.3d at 789 ("In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.") (*quoting Barney v. Pulsipher*, 143 F.3d 1299, 1307-1308 (10th Cir. 1998)). In *Canton*, the Supreme Court noted that "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task." 489 U.S. at 390 n.10. The Supreme Court concluded that the need to train officers on the use of deadly force in those circumstances is "so obvious" that failure to do so could be characterized as "deliberate indifference." *Id*. Here, Plaintiff alleges that Chief Hyde had equipped his officers with vehicles that he certainly knew would be used to arrest fleeing vehicles, and the failure to train officers about the

limits of the use of deadly force reflected deliberate indifference to the "'highly predictable consequence,' namely violations of constitutional rights." *Connick*, 563 U.S. at 63-64. *See also Bryson*, 627 F.3d at 789.  The Court therefore finds, at this stage of the litigation, the Plaintiff has sufficiently alleged deliberate indifference to the predictable consequence of the use of deadly force when using patrol vehicles as roadblocks.  *See, e. g.*, *Leadholm*, 2017 WL 1862313, at *8 ("Although Plaintiff's allegations are reasonably funneled down to one incident of excessive force, the incident involved *five* Commerce City police officers all alleged to have participated in the use of excessive force against an individual allegedly suffering from a medical condition. Taking these allegations as true, and given the frequency with which police officers attempt to stop persons driving unlawfully and the predictability that a lack of training will violate the constitutional rights of a medically-inhibited driver, the Court finds the allegations sufficient at this stage of the litigation to demonstrate the City's deliberate indifference to the predictable consequence of violating an ill driver's rights.").  *Compare with Porter v. Bd. of Cty. Commissioners of Oklahoma Cty.*, 2016 WL 4442835, at *5 (W.D. Okla. Aug. 19, 2016) ("The County did not provide its officers with vehicle computers so they could type license plate numbers while they were driving down the highway at speeds in excess of 100 miles per hour. . . . Plaintiff has failed to allege facts demonstrating that the County, by allowing its deputies to exercise their discretion in determining when to use their on-board computers, has acted with deliberate indifference. She has not alleged facts demonstrating that the County 'had been put on notice of [a risk of harm] either by a past pattern of wrongful acts or by the high predictability that wrongful acts would occur.'") (*quoting Bryson*, 627 F.3d at 790 (2010)).

The Defendant nevertheless also contends in its Reply that the Plaintiff has failed to acknowledge that officers are required to be CLEET-certified, which "Defendants argue [] serve to vitiate any argument that a municipality has a policy or custom of failing to train or supervise its officers." *Simpson v. Little*, 2020 WL 33216, at *6 (N.D. Okla. Jan. 2, 2020) (slip op.) (internal quotation omitted). "However, that is an evidentiary argument more appropriate for summary judgment." *Id.*, 2020 WL 33216, at *6 (denying Motion to Dismiss where Plaintiff alleged the City of Bixby failed to train its officers on the appropriate use of force and it was therefore plausible defendants had been deliberately indifferent to Plaintiff's constitutional rights) (*citing Jones*, 2015 WL 1279363, at *7). *See also Porter*, 2016 WL 4442835, at *4 ("Compliance with CLEET certificate requirements and standards would no doubt be some evidence of the county's effort to meet its training obligations. However, the fact that the Board itself does not train county deputies or set training standards, does not immunize it from liability for constitutional violations committed by county employees."); *Jones v. Hacker*, 2015 WL 1279363, at *8 n.7 (E.D. Okla. March 20, 2015) ("CLEET-certification supports *summary judgment* with respect to any argument that the City had a policy of custom of failing to train or supervise its officers.") (*citing Rollins v. Town of Haskell, Okla*., 2009 WL 3614784, at *10 (E.D. Okla. Oct. 28, 2009) (emphasis added)).  The Court thus denies the Town of Calera's Motion to Dismiss as to Plaintiff's claim of municipal liability based on an alleged failure to train.

## CONCLUSION

Accordingly, IT IS ORDERED that the Defendant Town of Calera's Motion to Dismiss and Brief in Support [Docket No. 8] is hereby GRANTED IN PART and DENIED

IN PART, such that the Plaintiff's Motion To Dismiss is granted as the Plaintiff's claim of municipal liability under a theory of ratification and is denied as to Plaintiff's claim of municipal liability for failure to train.

**DATED** this 6th day of July, 2020.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma