IN THE UNTED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JESSICA OSBORN, | ) |
| Plaintiff, | ) ) ) ) ) |
| v. | ) ) Case No. CIV-20-96-SPS |
| CHRIS MEITZEN, Individually; | ) ) ) |
| Defendant. | ) ) |

## ORDER

This case arises out of an encounter between the Plaintiff, Jessica Osborn, and Chris Meitzen, who served as an officer for the Town of Calera, Oklahoma.[1] The Plaintiff has alleged a claim of excessive force as to Defendant Meitzen pursuant to 42 U.S.C. § 1983. For the reasons set forth below, the Court finds that Defendant Chris Meitzen's Motion for Summary Judgment and Brief in Support [Docket No. 32] should be GRANTED.

### I. Procedural History

On April 1, 2020, the Plaintiff filed the present case in this Court, originally alleging two causes of action, although the second cause of action has since been dismissed. *See* Docket Nos. 2, 41. The Plaintiff's first and sole remaining claim for relief is raised pursuant to 42 U.S.C. § 1983 as to Defendant Meitzen, alleging unconstitutional use of excessive and unreasonable force. The Court addresses this claim below.

---

[1] The Plaintiff had also alleged claims as to the Town of Calera, Oklahoma, but the parties have now entered a Stipulation of Dismissal as to Defendant Calera, Oklahoma. *See* Docket Nos. 2, 41.

## I. Law Applicable

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

## II. Factual Background

The undisputed facts reflect that on April 12, 2018, around 9:38 p.m., Bryan County Sheriff's Deputy Mark Idell radioed in that he was in pursuit of a motorcycle and reaching speeds of up to 90 miles per hour in an effort to keep up. Defendant Meitzen was on duty in the town of Calera, Oklahoma that evening, and he was authorized as a member of the Calera Police Department to leave Calera city limits to provide assistance to other law enforcement officers. Defendant Meitzen heard Deputy Idell's radio transmission and got in his patrol car to head toward the area of pursuit. The parties agree that Defendant Meitzen had no reason to believe force, specifically deadly force, was necessary with regard to the driver of the motorcycle.

As Defendant Meitzen made his way toward the pursuit, Deputy Idell provided updates as to location and direction. Pertinent here, Deputy Idell indicated that he was pursuing the motorcycle heading west on Smiser Road and nearing Jack Rabbit Alley. Smiser Road is a blacktop road, approximately twenty feet wide, and has no shoulders. Additionally, it is in a rural location and the roadway has no lights. Based on Deputy Idell's radio transmissions, Defendant Meitzen understood that the pursuit was coming towards him as he was driving on Smiser Road, and he activated his emergency lights which also activated his dashboard camera. Defendant Meitzen was driving in the center of the road, and he was eventually able to see headlights and Deputy Idell's emergency lights coming toward him.

Based on a review of the dash camera from Defendant Meitzen's vehicle, the following events occurred. As the motorcycle and Deputy Idell drew nearer, Defendant Meitzen steered his car to the left of the road. The motorcycle then collided with the side of Defendant Meitzen's patrol car. After the collision, Defendant Meitzen pulled his car to a full stop off to the left side the roadway, facing oncoming traffic. At the time of the collision, Deputy Idell estimated the motorcycle was going approximately ninety miles per hour. The driver of the motorcycle, the Plaintiff, was injured in the collision.

## Analysis

Defendant Meitzen asserts that the Plaintiff's Fourth Amendment claim for excessive force must fail because no seizure occurred upon which to base the claim. Alternatively, he contends that he acted reasonably under the circumstances and did not violate any clearly established constitutional law, and is therefore entitled to qualified

immunity. More specifically, Defendant Meitzen asserts that when he steered his vehicle into the left side of the road, he was intending to pull to the side to allow the Plaintiff and Deputy Idell to pass, then he planned to make a u-turn to get behind Deputy Idell and provide support. He contends that swerving to the left was an effort to get out of the path of the motorcycle, which he contends was in the center of the road, and that he did not intend to set up any kind of roadblock and did not do anything to intentionally cause his patrol vehicle to strike the motorcycle. The Plaintiff contends that Defendant Meitzen *did* violate her Fourth Amendment rights and is therefore not entitled to qualified immunity. She counters that Defendant Meitzen maneuvered his vehicle in an effort to end the pursuit by using his vehicle as a roadblock and that he did so without giving the Plaintiff an opportunity to avoid the crash. For the reasons set forth below, the Court finds that Defendant Meitzen is entitled to qualified immunity because Plaintiff has failed to identify a violation of a clearly established constitutional right.

The Plaintiff has alleged a § 1983 claim of excessive force against Defendant Meitzen. "To state an excessive force claim 'under the Fourth Amendment, plaintiffs must show *both* that a 'seizure' occurred and that the seizure was 'unreasonable.'" *Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010) (emphasis in original) (*quoting Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000)). Here, the Court must address both of those questions, *i. e.*, whether there was a seizure and whether such seizure was unreasonable.

The Court first turns to the question of whether a seizure occurred. The Supreme Court has recently reiterated that "[a] seizure requires the use of force *with intent to*

4

*restrain*. Accidental force will not qualify." *Torres v. Madrid*, _ U.S. _, 141 S. Ct. 989, 998 (2021) (*citing County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)). In other words, "for a government official's physical contact to qualify as a Fourth Amendment seizure, it must be accompanied by an intent to restrain the person seized." *United States v. Somerville*, 2021 WL 3476596, at *11 (D. Minn. May 13, 2021). Indeed, the Supreme Court has specifically stated that "no Fourth Amendment seizure would take place where a 'pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit,' but accidentally stopped the suspect by crashing into him." *Lewis*, 523 U.S. at 844 (*quoting Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) ("Fourth Amendment seizure [occurs] when there is a governmental termination of freedom of movement *through means intentionally applied*.") (emphasis in original)).

Here, the key question is whether Defendant Meitzen accidentally stopped the Plaintiff by crashing into her, or whether he was deliberately using his car as a roadblock in an effort to stop her. Defendant Meitzen contends that he was pulling off to the side of the road to let them pass, but rather than pulling off on the right-hand side of the road, he crossed the entire road to pull off on the left-hand side. The Plaintiff contends that the fact he went to the left side of the road demonstrates that Defendant Meitzen was intentionally using his vehicle as a roadblock in an effort to stop her. "As a general matter our cases hold that, where there are disputed issues of material fact, the question of reasonableness underlying a Fourth Amendment violation is for the jury." *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1253 (10th Cir. 2013). Deciding who to believe requires a credibility determination and is not appropriate at the summary judgment stage; rather, this is a

question for a jury. *See Stoedter v. Unified Police Dep't of Greater Salt Lake*, 2014 WL 12597826, at *13 (D. Utah Aug. 6, 2014) ("A jury should decide these factual questions. Until then, the court cannot determine whether the first prong of qualified immunity is met."). *See also Bain v. City of Albuquerque*, 2004 WL 7338268, at *6 (D.N.M. Feb. 25, 2004) ("The true facts in this case lie somewhere behind the parties' contradictory accounts. The relevant and material circumstances are disputed, and the accuracy of the facts depends on whose version is credible. Therefore, Defendants are not entitled to summary judgment on Plaintiff's claim under the Fourth Amendment based on unlawful seizure.") (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (drawing of legitimate inferences from facts is jury function, not judge function on motion for summary judgment)). Because this critical fact question remains, the Court likewise cannot assess whether the seizure, if it occurred, was reasonable.

In this case, however, the Defendant is seeking summary judgment based on qualified immunity. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right *and* (2) the constitutional right was clearly established. The court may consider either of these prongs before the other 'in light of the circumstances in the particular case at hand.'" *Cunningham v. New Mexico*, 2014 WL 12791236, at *4 (D. N.M. 2014) (*quoting Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (emphasis added), *and Pearson v. Callahan*, 555 U.S. 223, (2009)). And "immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, _ U.S. _, 137 S. Ct. 548, 551 (2017) (*quoting Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "If, and only if, the

question for a jury. *See Stoedter v. Unified Police Dep't of Greater Salt Lake*, 2014 WL 12597826, at *13 (D. Utah Aug. 6, 2014) ("A jury should decide these factual questions. Until then, the court cannot determine whether the first prong of qualified immunity is met."). *See also Bain v. City of Albuquerque*, 2004 WL 7338268, at *6 (D.N.M. Feb. 25, 2004) ("The true facts in this case lie somewhere behind the parties' contradictory accounts. The relevant and material circumstances are disputed, and the accuracy of the facts depends on whose version is credible. Therefore, Defendants are not entitled to summary judgment on Plaintiff's claim under the Fourth Amendment based on unlawful seizure.") (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (drawing of legitimate inferences from facts is jury function, not judge function on motion for summary judgment)). Because this critical fact question remains, the Court likewise cannot assess whether the seizure, if it occurred, was reasonable.

In this case, however, the Defendant is seeking summary judgment based on qualified immunity. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right *and* (2) the constitutional right was clearly established. The court may consider either of these prongs before the other 'in light of the circumstances in the particular case at hand.'" *Cunningham v. New Mexico*, 2014 WL 12791236, at *4 (D. N.M. 2014) (*quoting Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (emphasis added), *and Pearson v. Callahan*, 555 U.S. 223, (2009)). And "immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, _ U.S. _, 137 S. Ct. 548, 551 (2017) (*quoting Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "If, and only if, the

plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013) (internal quotation marks omitted). Importantly here, "[t]here is an overlap between the general unlawful seizure analysis engaged in above and the first prong analysis [*i. e.*, whether the Defendant violated a constitutional right] engaged in for purposes of qualified immunity. Both require a determination of whether Plaintiff was appropriately seized by officers[.]" *Stoedter*, 2014 WL 12597826, at *12. As discussed above, the issue of whether a violation of constitutional law occurred is one for the jury. The Court therefore turns to the question of whether, if a seizure *had occurred*, *i. e.*, if Defendant Meitzen intentionally used his vehicle to stop the Plaintiff, such a seizure violated the Plaintiff's clearly established constitutional right to be free from unreasonable seizures.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (receded from on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)). The burden of identifying a clearly established right lies with the Plaintiff. *See A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016) ("Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct 'by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as [she] maintains.'")

(*quoting Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)). To be sure, "'clearly established law' should not be defined 'at a high level of generality.'" *Pauly*, 137 S. Ct. at 552 (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Instead, it "must be 'particularized' to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (*quoting Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987)). Therefore, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12 (emphasis in original). *See also N.E.L. v. Douglas County, Colorado*, 740 Fed. Appx. 920, 928 n.18 (10th Cir. 2018) (noting that *Hope v. Pelzer*, 536 U.S. 730, 739-740 (2002) (finding that the "salient question" was whether the law at the time "gave respondents fair warning that their alleged treatment" violated the constitution), "appears to have fallen out of favor, yielding to a more robust qualified immunity."); *Aldaba v. Pickens*, 844 F.3d 870, 874 n.1 (10th Cir. 2016) ("We also note that the majority opinion in *Mullenix* does not cite [*Hope v. Pelzer*]. . . . In any event, the Supreme Court told us to apply *Mullenix*, so we do.").

But while the facts must be particularized, they do not have to be identical.[2] *Ziglar v. Abbasi*, _ U.S. _, 137 S. Ct. 1843, 1866-1867 (2017) ("It is not necessary, of course, that 'the very action in question has previously been held unlawful.'") (*quoting Anderson v.*

---

[2] The Court finds this rule to be consistent with the Tenth Circuit's recent opinion in *Frasier v. Evans*, 992 F.3d 1003 (10th Cir. 2021), in which the Tenth Circuit reiterated the Supreme Court's admonition that a clearly established right must not be defined at a "high level of generality" and urged caution in applying the *Hope v. Pelzer* rule of "fair warning" only to the "rare obvious case involving extreme circumstances or particularly egregious misconduct." 992 F.3d at 1021 (*quoting, inter alia, District of Columbia v. Wesby*, _ U.S. _, 138 S. Ct. 577, 590 (2018).

8

*Creighton*, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.")). Indeed, "[w]hile there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate." *District of Columbia v. Wesby*, _ U.S. _, 138 S. Ct. 577, 590 (2018) (quotation omitted).

Here, the Plaintiff has identified no law that a law enforcement officer intentionally causing a collision in order to stop a fleeing individual is a violation of clearly established law. Rather, she cited deposition testimony from Defendant Meitzen that the use of deadly force was not justified in this case and from Deputy Idell that intentionally causing the collision was not objectively reasonable. The Plaintiff has pointed to no Supreme Court or Tenth Circuit law, however, prohibiting an officer from acting in similar circumstances. *See Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) ("Perry must identify a case where an official acting under similar circumstances as [Defendant] was held to have violated the Constitution.") (internal quotations omitted) (*citing Pauly*, 137 S. Ct. at 552). Furthermore, even if Defendant Meitzen was found to have violated a municipal policy, a confirmed violation of municipal policy is insufficient to establish a violation of clearly establish constitutional law. *See, e. g.*, *Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir.

9

2005) ("This Court has consistently held that the violation of police regulations is insufficient to ground a § 1983 action for excessive force.").

The Court is mindful of the Supreme Court's admonition that "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Furthermore, there Court is not convinced that the Plaintiff posed "no threat" to others as she was speeding down a dark two-lane road and perhaps not always staying in her own lane. But more recent instruction from the Supreme Court states that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, *even when* it places the fleeing motorist at risk of serious injury or death." *Scott v. Harris*, 550 U.S. 372, 386 (2007). Moreover, "[t]he [Supreme] Court has [] never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity." *Mullenix v. Luna*, 577 U.S. at 15. The Court therefore has no trouble concluding here that the Plaintiff has failed to meet her burden of establishing a violation of clearly established law.

Finally, the Court takes notes of *Walker v. Davis*, 649 F.3d 502 (6th Cir. 2011), in which the Sixth Circuit held that fact questions remained as to whether an officer intentionally rammed the decedent as he rode his motorcycle across a field, but that intentionally ramming a motorcycle with a police cruiser where the individual "posed no threat to anyone as he rode his motorcycle across an empty field in the middle of the night in rural Kentucky" was sufficient to assert a violation of his clearly established

constitutional rights. 649 F.3d at 504. However, *Walker* is only of persuasive authority and insufficient to identify a clearly established law *in this Court*. In any event, this Sixth Circuit decision pre-dates *Mullenix* and the Court is not convinced such a scenario would, in fact, be a violation of a clearly established right in a post-*Mullenix* context. Accordingly, Defendant Meitzen is entitled to qualified immunity in this case.

## CONCLUSION

In summary, the Defendant Chris Meitzen's Motion for Summary Judgment and Brief in Support [Docket No. 32] is hereby GRANTED.

DATED this 23rd day of November, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**